IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.   07-549 |
| | | |
| v. | : | DATE FILED:   January 23, 2008 |
| | | |
| MAURICE PHILLIPS, | : | VIOLATIONS: |
|    a/k/a "Marlon Sampson," | | 21 U.S.C. § 846 (conspiracy to distribute |
| CHANELL CUNNINGHAM | : | 5 kilograms or more of cocaine – 1 count) |
| MARK HARRIS | | 21 U.S.C. § 841(a)(1) (possession with |
| RAMON ALVEAR, | : | intent to distribute cocaine  – 1 count) |
|    a/k/a "Little Ray," | | 21 U.S.C. § 848 (engaging in a continuing |
| DAVID GARCIA, | : | criminal enterprise - 1 count) |
|    a/k/a "Twenty," | | 18 U.S.C. § 1956(h) (conspiracy to commit |
| SAMUEL MCQUEEN, | : | money laundering – 1 count) |
|    a/k/a "Grandpop," | | 18 U.S.C. § 1956(a)(1)(B)(i) (concealment |
|    a/k/a "Old Dude," | : | money laundering - 6 counts) |
| THEOPHUS ORR | | 18 U.S.C. § 1957 (transactional money |
| MARCO CAMACHO | | laundering – 2 counts) |
| TYRECE LAWRENCE | | 18 U.S.C. § 1958 (conspiracy to use |
| ANTHONY BALLARD, | : | interstate commerce facilities in the |
|    a/k/a "Buzzard," | | commission of murder-for-hire – 1 count) |
|    a/k/a "Jerome Lane," | : | 18 U.S.C. § 1958 (use of interstate |
| SHERMAN KEMP, | | commerce facilities in the commission of |
|    a/k/a "Goose," | : | murder-for-hire – 1 count) |
|    a/k/a "Hoseay Sachez," | | 18 U.S.C. §§ 1111(a), 1512(a)(1)(C) |
|    a/k/a "Lil Dog" | : | (murder, tampering with a witness, victim, |
| | | or an informant – 1 count) |
| | : | 18 U.S.C. § 2 (aiding and abetting) |
| | | Notices of forfeiture |
| | : | Notice of special findings |

## S U P E R S E D I N G   I N D I C T M E N T

## COUNT ONE

**THE GRAND JURY CHARGES THAT:**

1.  From at least in or about 1998 through in or about 2007, in Philadelphia, in the

Eastern District of Pennsylvania, and elsewhere, defendants

**MAURICE PHILLIPS,**
**a/k/a "Marlon Sampson,"**
**CHANELL CUNNINGHAM,**
**MARK HARRIS,**
**RAMON ALVEAR,**
**a/k/a "Little Ray,"**
**DAVID GARCIA,**
**a/k/a "Twenty,"**
**SAMUEL MCQUEEN,**
**a/k/a "Grandpop,"**
**a/k/a "Old Dude,"**
**THEOPHUS ORR,**
**MARCO CAMACHO,**
**TYRECE LAWRENCE,**
**ANTHONY BALLARD,**
**a/k/a "Buzzard,"**
**a/k/a "Jerome Lane," and**
**SHERMAN KEMP,**
**a/k/a "Goose,"**
**a/k/a "Hoseay Sachez,"**
**a/k/a "Lil Dog"**

conspired and agreed, together and with others known and unknown to the grand jury, to

knowingly and intentionally distribute 5 kilograms or more, that is, thousands of kilograms, of a

mixture and substance containing a detectable amount of cocaine, a Schedule II controlled

substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A).

2

### MANNER AND MEANS

It was part of the conspiracy that:

### The PCO and the ACSO

2. The Phillips Cocaine Organization (hereinafter "PCO") was a multistate, multimillion dollar, cocaine distribution organization based throughout the United States' eastern seaboard. It trafficked thousands of kilograms of cocaine in, among other places, the Philadelphia metropolitan area, New Jersey, and Maryland. The cocaine had a wholesale value of at least $31,000,000.

3. The Alvear Cocaine Supply Organization (hereinafter "ACSO") was a Texas-based multi-kilogram quantity cocaine supply organization that received its cocaine supply from Mexico and bordering areas. This necessitated numerous trips by ACSO personnel to and from Mexico. The ACSO aided the PCO in its trafficking effort by, among other things, supplying the PCO with numerous kilograms of cocaine.

4. PCO and ACSO personnel, working in tandem, transported PCO cash via tractor trailer from the eastern seaboard to the ACSO in Texas. PCO personnel secreted millions of dollars in cash in duffel bags as payment for thousands of kilograms of ACSO cocaine.

5. PCO and ACSO personnel, working in tandem, transported ACSO cocaine via tractor-trailer from Texas to the PCO on the eastern seaboard.

6. PCO and ACSO personnel worked in tandem to assure that their unlawful drug trafficking activities remained undiscovered by law enforcement authorities. For example, vehicles used to transport cocaine from the ACSO to the PCO , which had questionable reliability were replaced with inconspicuous but reliable vehicles.

7. Because PCO drug trafficking activities generated millions of dollars in gross receipts and profits, PCO leaders employed and used Chineta Glanville, a professional money launderer, and other individuals, including relatives and friends, to accept and deliver cash drug proceeds and to make cash deposits of such proceeds into bank accounts to conceal the source of their income and consequently, among other things, to prevent law enforcement authorities from determining that their income was the result of drug trafficking.

8. PCO leaders protected and promoted the continued viability of the conspiracy by, among other things: a) retaining lawyers for criminally charged PCO employees and associates; b) paying legal fees for criminally charged PCO employees and associates; and c) putting money into the prison accounts of incarcerated PCO employees and associates.

9. PCO leaders reaped the benefits of their ill-gotten gains by purchasing expensive homes, high-end automobiles, and spending their illegal proceeds on lavish lifestyles, including weddings and parties.

10. PCO leaders used murder and other violent activities to further the goals of the conspiracy, including the protection of the profits of the conspiracy and the elimination of witnesses, whose cooperation with law enforcement authorities could potentially threaten the continued viability of the PCO.

### **The Defendants**

11. Defendant MAURICE PHILLIPS was the founder, organizer, and leader of the PCO. His responsibilities included, among other things, procuring multi-kilogram quantities of cocaine for the PCO to distribute, directing PCO personnel activities, and protecting the continued viability of the PCO.

4

12. Defendant CHANELL CUNNINGHAM was a leader of the PCO and reported directly to defendant MAURICE PHILLIPS.  Her duties included, among other things, recruiting PCO personnel and finding drug traffickers to serve as outlets for PCO cocaine, as well as to launder the proceeds of their drug trafficking activities.

13.  Defendant ANTHONY BALLARD was a leader of the PCO and reported directly to defendant MAURICE PHILLIPS.  His duties included, among other things, managing the drug trafficking affairs of the PCO in the metropolitan Baltimore, Maryland area.

14.  Defendant SHERMAN KEMP was a leader of the PCO who initially reported to defendant MARK HARRIS and later reported directly to defendant MAURICE PHILLIPS.  His duties included, among other things, managing the drug trafficking affairs of the PCO in the metropolitan Baltimore, Maryland area.

15.  Defendant MARK HARRIS was a leader of the PCO and reported directly to defendant MAURICE PHILLIPS.  His duties included, among other things, managing the drug trafficking affairs of the PCO in Maryland.

16.  Defendant RAMON ALVEAR was the founder, organizer, and leader of the ACSO.  His responsibilities included, among other things, procuring multi-kilograms of cocaine from various sources, which cocaine he supplied to, among others, the PCO.  Defendant ALVEAR also directed ACSO personnel and, to a lesser extent, PCO  personnel, and protected the continued viability of the ACSO and the PCO by taking steps to minimize the disruption by law enforcement of their drug trafficking activities.

17.  Defendant DAVID GARCIA was a member of the ACSO and reported directly to defendant RAMON ALVEAR.  His duties included, but were not limited to, obtaining

cocaine from ACSO sources and working directly with PCO personnel to assure that multi-kilogram quantities of cocaine were safely transported from the ACSO to the PCO.

18.  Defendant MARCO CAMACHO was a member of the PCO and reported directly to defendant MARK HARRIS, among others.  His primary duties consisted of transporting, via tractor-trailer, large amounts of United States currency from the PCO to the ACSO and transporting large amounts of cocaine from the ACSO to the PCO.

19.  Defendant THEOPHUS ORR was a member of the PCO and reported directly to defendant MAURICE PHILLIPS, among others.  His primary duties consisted of transporting, via tractor-trailer, PCO cocaine and PCO cash.

20.  Defendant SAMUEL MCQUEEN was a member of the PCO and reported directly to defendant MAURICE PHILLIPS, among others.  His primary duties consisted of transporting PCO cocaine and PCO cash.

21.  Defendant TYRECE LAWRENCE was a member of the PCO.  His primary duties consisted of storing PCO cocaine.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its object, the defendants, and others known and unknown to the grand jury, committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

### The PCO's Early Years

1. In or about at least 1998, at the direction of defendant MAURICE PHILLIPS, the PCO received part of its cocaine supply from P.H., an individual known to the grand jury, who was based in the Dallas, Texas, metropolitan area.

2. In or about summer 1998, defendant CHANELL CUNNINGHAM was advised by New Jersey cocaine trafficker K.J., an individual known to the grand jury and with whom defendant CUNNINGHAM was romantically involved, that he had a problem with his cocaine supplier.

3. In or about summer 1998, defendant CHANELL CUNNINGHAM told K.J. that she would introduce him to a reliable source of cocaine.

4. In or about 1998, defendant CHANELL CUNNINGHAM introduced K.J. to defendant MAURICE PHILLIPS for the purpose of arranging for the PCO to become K.J.'s cocaine supplier.

5. In or about 1998, during their initial meeting at defendant CHANELL CUNNINGHAM's mother's house, defendant MAURICE PHILLIPS and K.J. discussed the price and quantities of PCO cocaine available for purchase.

6. In or about 1998, during the initial period of K.J.'s business relationship with the PCO, defendant MAURICE PHILLIPS provided approximately 5 to 6 kilograms of cocaine

for a price of approximately $20,000 to $21,000 per kilogram to K.J.

   7. Beginning in or about 1998, and continuing for a period of several years thereafter, defendant MAURICE PHILLIPS provided multi-kilogram quantities of PCO cocaine to K.J., which cocaine defendant PHILLIPS often retrieved from his Range Rover or a rental car.

   8. Beginning in or about 1998, and continuing for a period of several years thereafter, defendant CHANELL CUNNINGHAM provided multi-kilogram quantities of PCO cocaine to K.J., which cocaine defendant CUNNINGHAM often provided to K.J. at defendant CUNNINGHAM's various residences.

   9. In or about July 1999, defendant MAURICE PHILLIPS went to the funeral of P.H., the PCO's cocaine supplier in Texas, to assure himself that P.H. was in fact dead and not feigning unavailability for the purpose of avoiding supplying cocaine that P.H. was obligated to provide to the PCO.

   10. In or about July 1999, in Dallas, Texas, defendant MAURICE PHILLIPS received several kilograms of cocaine from a relative of P.H., who provided this cocaine on decedent P.H.'s behalf.

   11. In or about 1999, defendant ANTHONY BALLARD in conjunction with J. W., an individual known to the grand jury, trafficked kilograms of cocaine for the PCO in the metropolitan Baltimore, Maryland area.

   12. In or about 1999, defendant SHERMAN KEMP, while working for J. W., and, to a lesser degree, defendant ANTHONY BALLARD, trafficked PCO cocaine in the metropolitan Baltimore, Maryland area.

13. From in or about 2000, through in or about 2001, after J. W. was incarcerated, defendant SHERMAN KEMP trafficked kilogram quantities of PCO cocaine, which he received from another PCO principal.

14. In or about late 1999, defendant CHANELL CUNNINGHAM introduced Philadelphia cocaine trafficker L.S., an individual known to the grand jury and with whom defendant CUNNINGHAM was romantically involved, and who later became a PCO member, to defendant MAURICE PHILLIPS for the purpose of negotiating to have multi-kilogram quantities of PCO cocaine distributed to L.S. by defendant CUNNINGHAM.

15. In or about late 1999, defendant CHANELL CUNNINGHAM distributed approximately 10 kilograms of cocaine to L.S.

16. From in or about late 1999 through in or about the period that L.S. became a PCO member, defendant CHANELL CUNNINGHAM provided approximately 30 kilograms of cocaine to L.S. each month.

17. In or about autumn 2000, defendant CHANELL CUNNINGHAM told Philadelphia cocaine trafficker M.T., an individual known to the grand jury and with whom defendant CUNNINGHAM was romantically involved, that she worked for defendant MAURICE PHILLIPS, who was coming to Philadelphia shortly.

18. In or about autumn 2000, defendant CHANELL CUNNINGHAM told M.T. that she was in charge of defendant MAURICE PHILLIPS' PCO operation in Philadelphia.

19. In or about autumn 2000, defendant CHANELL CUNNINGHAM told M.T. that the PCO's cocaine supplier was located in Texas and that she was going to Texas to meet with the supplier.

9

20. From in or about autumn 2000, through in or about late 2000 or early 2001, defendant CHANELL CUNNINGHAM distributed approximately 25 to 30 kilograms of cocaine to M.T.

21. In or about 2001, defendant CHANELL CUNNINGHAM accompanied K.J. to a new real estate development in Sicklerville, New Jersey, where K.J. was contemplating purchasing a home. Defendant CUNNINGHAM subsequently told K.J. that because she was going to purchase a home in the development, K.J. did not need do so. The home purchased by defendant CUNNINGHAM was subsequently used to facilitate the PCO's cocaine trafficking activities.

22. In or about 2001, defendant CHANEL CUNNINGHAM told K.J. that she was going to purchase her Sicklerville, New Jersey home in her aunt's name.

23. On or about November 21, 2000, defendants CHANELL CUNNINGHAM and MAURICE PHILLIPS, through PCO money launderer Chineta Glanville, purchased 137 Mullen Drive, Sicklerville, New Jersey (the "Mullen Drive residence") for a purchase price of $217,735, including upgrades. The house was titled in the name "Phoenix Terrell," an alias of Chineta Glanville, who posed as the fictitious Phoenix Terrell at the closing. It was used to facilitate PCO cocaine trafficking by serving as, among other things, a transfer point for both cocaine and money.

From in or about late 2000, to in or about early 2001:

24. On the New Jersey Turnpike, defendant CHANELL CUNNINGHAM introduced M.T. to defendant MAURICE PHILLIPS.

25. Defendants MAURICE PHILLIPS and CHANELL CUNNINGHAM met

10

with M.T. outside of the Marriott Hotel in Center City, Philadelphia for the purpose of

distributing cocaine to M.T.  During this meeting, defendant MAURICE PHILLIPS retrieved

approximately 5 kilograms of cocaine from the trunk of a Honda automobile and distributed this

cocaine to M.T.

26.  On 33rd Street in Philadelphia, defendant MAURICE PHILLIPS distributed

approximately 10 kilograms of cocaine to M.T.

27.  After being falsely advised by M.T. that M.T. had been robbed of a large sum

of money, which had purportedly resulted from the sale of approximately 10 kilograms of PCO

cocaine that M.T. had received on credit, defendant MAURICE PHILLIPS told M.T. that he

(defendant PHILLIPS) would "take care" of the situation once M.T. told him who the robbers

were.

28.  In or about February 2001, in Washington, D.C., defendants MAURICE

PHILLIPS, CHANELL CUNNINGHAM, and MARK HARRIS, and L.S. (who by that time had

become a member of the PCO) and other PCO members met with and entertained M.T. and other

PCO cocaine customers at the National Basketball Association's All Star Game.

29.  From in or about early 2001 through in or about spring/summer 2001,

defendants MAURICE PHILLIPS and CHANELL CUNNINGHAM continued to distribute

multi-kilogram quantities of cocaine to M.T., who in turn, through his Philadelphia street corner

operation, redistributed this cocaine to the general populace.

30.  From in or about late 2000, through in or about spring to in or about summer

2001, defendants MAURICE PHILLIPS and CHANELL CUNNINGHAM collectively

distributed approximately 70 kilograms of cocaine to M.T.

31. In or about April 2001, defendant MAURICE PHILLIPS, through one of Chineta Glanville's businesses, purchased a 2001 Mercedes-Benz CL 500 2-door coupe in excess of $100,000. The automobile was subsequently equipped for the PCO with a hidden compartment suitable for secreting cocaine and money.

32. On or about May 5, 2001, at the Time Hotel in New York City, New York, defendant CHANELL CUNNINGHAM hosted a birthday party for defendant MAURICE PHILLIPS, at a cost of approximately $11,982. The party entertained PCO personnel and PCO cocaine customers including, but not limited to, defendant MARK HARRIS, and L.S., K.J. and M.T.

33. In or about late May 2001, during the Memorial Day weekend, PCO personnel, including defendants MAURICE PHILLIPS, CHANELL CUNNINGHAM, and MARK HARRIS and L.S., along with PCO cocaine customers, including but not limited to M.T., met in Miami Beach, Florida for the purpose of, among other things, fostering continued good relations.

34. In or about 2001, K.J. owed money to the PCO because K.J.'s workers had not paid the PCO for cocaine received in a timely manner.

35. From in or about 1998, through in or about 2001, defendants MAURICE PHILLIPS and CHANELL CUNNINGHAM collectively distributed at least approximately 500 kilograms of cocaine to K.J.

36. From in or about spring to summer 2001, through in or about 2002, defendant SAMUEL MCQUEEN repeatedly met with L.S. at Exit 3 of the New Jersey Turnpike and provided PCO cocaine to L.S. for further distribution through the PCO network.

37. From in or about spring to summer 2001, through in or about 2002, L.S. provided no less then $80,000 dollars on a regular, that is, often a weekly basis, to defendant MAURICE PHILLIPS, at the Mullen Drive residence, which money represented receipts from trafficking PCO cocaine.

In or about August 2001:

38. Defendant MAURICE PHILLIPS called L.S. and instructed L.S. to meet him at the Mullen Drive residence so that they could together receive a large delivery of cocaine from PCO courier, defendant THEOPHUS ORR.

39. Defendant MAURICE PHILLIPS and L.S. drove to Exit 3 of the New Jersey Turnpike and met with defendant THEOPHUS ORR, who was driving a tractor-trailer.

40. Defendants MAURICE PHILLIPS and THEOPHUS ORR and L.S. unloaded approximately 85 kilograms of cocaine from defendant ORR's tractor-trailer, and secreted this cocaine in the trunk of L.S.'s car.

41. After the approximately 85 kilograms of cocaine had been placed in the trunk of L.S.'s car, defendant MAURICE PHILLIPS instructed L.S. to make the cocaine "disappear."

42. L.S. transported the 85 kilograms of cocaine to defendant TYRECE LAWRENCE's home in Philadelphia, where defendant LAWRENCE stored the cocaine for the PCO.

43. In or about October 2001, defendant MAURICE PHILLIPS provided approximately $16,000 to B.P., an individual known to the grand jury, for the purpose of aiding B.P. in establishing an additional cocaine line of supply for the PCO.

From in or about late 2001 to in or about early 2002:

13

44. Defendant MAURICE PHILLIPS told L.S. that defendant THEOPHUS ORR was going to be in the area soon and that L.S. should obtain money if he wanted to get PCO cocaine for distribution from defendant ORR.

45. Defendant THEOPHUS ORR met with L.S. in the vicinity of Exits 3 or 4 of the New Jersey Turnpike. During the ensuing meeting, defendant ORR received approximately $250,000 from L.S., which belonged to both defendant MAURICE PHILLIPS and L.S.

46. Defendant MAURICE PHILLIPS provided numerous kilograms of PCO cocaine to L.S. for distribution, which cocaine was the result of the $250,000 that defendant THEOPHUS ORR had received from L.S.

47. In or about February 2002, in Philadelphia, defendant MAURICE PHILLIPS and L.S. hosted PCO members and cocaine customers in a $27,000 box suite at the National Basketball Association All Star Game.

### ACSO Collects Money from PCO in Philadelphia

48. On or about March 7, 2002, defendant RAMON ALVEAR and other ACSO personnel, including M.M. and A.S., individuals known to the grand jury, checked into the Philadelphia Airport Hilton Hotel.

49. On or about March 7, 2002, defendant MAURICE PHILLIPS told L.S. that defendant PHILLIPS' "connection" was in town and borrowed an old car belonging to L.S. for the purpose of meeting with the connection.

50. On our about March 7, 2002, in Philadelphia, defendant MAURICE PHILLIPS gave a large sum of money to defendant RAMON ALVEAR and other ACSO personnel.

14

### Maurice Phillips Orders the Murder of Chineta Glanville

In or about June 2002:

51.  L.S.'s wife, F.S., a person known to the grand jury, had dinner with defendants CHANELL CUNNINGHAM and MAURICE PHILLIPS.  During dinner, F.S. told defendants CUNNINGHAM and PHILLIPS that Chineta Glanville told F.S. that she (Glanville) was cooperating with federal law enforcement authorities and further told F.S. that Glanville, L.S., F.S., and defendants CUNNINGHAM and PHILLIPS were all going to go to jail.

52.  Defendant MAURICE PHILLIPS gave approximately $9,000 to L.S.'s wife for the purpose of paying legal fees for L.S., who was incarcerated at the time.

53.  Defendant MAURICE PHILLIPS contacted B.P., charged elsewhere, and told B.P. that he (defendant PHILLIPS) needed to get rid of Chineta Glanville, the woman who was laundering his drug proceeds, because she was being investigated by law enforcement authorities and could be a witness against him.

In or about early June 2002:

54.  Defendant MAURICE PHILLIPS arranged for B.P. to visit him in New Jersey for the purpose of discussing murdering Chineta Glanville.

55.  During a meeting with B.P. in New Jersey, defendant MAURICE PHILLIPS offered B.P. $18,000 in cash to kill Chineta Glanville.

56.  Defendant MAURICE PHILLIPS and B.P. drove from New Jersey to suburban Philadelphia for the purpose of showing B.P. the location of Chineta Glanville's house, which was located at 7900 Louise Lane in Wyndmoor, Pennsylvania.

57.  On or about June 23, 2002, B.P. drove from Tennessee to New Jersey for the

purpose of murdering Chineta Glanville for defendant MAURICE PHILLIPS.

On or about June 24, 2002:

58.  Defendants MAURICE PHILLIPS and CHANELL CUNNINGHAM visited L.S. in prison and attempted to confirm that Chineta Glanville was cooperating with law enforcement authorities.

59.  Defendant MAURICE PHILLIPS drove B.P. from New Jersey past Chineta Glanville's suburban Montgomery County home, for the purpose of finalizing arrangements for the murder of Chineta Glanville.

60.  Defendant MAURICE PHILLIPS and B.P. visited Federal Express employee R.S., an individual known to the grand jury, at a Federal Express facility in New Jersey, so that R.S. could provide them with a firearm to commit the Glanville murder, and a Federal Express uniform, hat, and package that would serve as a disguise for B.P.

61.  Defendant MAURICE PHILLIPS gave B.P. instructions relating to the impending murder of Chineta Glanville.  Defendant PHILLIPS told B.P., among other things, that B.P. had to murder Glanville during a particular time frame on June 25, 2002, because defendant PHILLIPS had arranged to have an alibi for the scheduled murder time.

On or about the morning of June 25, 2002:

62.  Defendant MAURICE PHILLIPS gave a firearm and a Federal Express uniform, hat, and empty package to B.P.

63.  B.P. drove from defendant MAURICE PHILLIPS' residence in New Jersey, to Chineta Glanville's Louise Lane residence in Montgomery County, for the purpose of murdering Chineta Glanville.

16

64. At defendant MAURICE PHILLIPS' direction, B.P., while disguised in a Federal Express uniform and hat, murdered Chineta Glanville by shooting her twice in the back of the head. B.P. also murdered Glanville's godson, Dane King, who was at Glanville's residence when Glanville was killed, by repeatedly shooting him.

65. In or about July 2002, in Baltimore, Maryland, defendant MAURICE PHILLIPS had an associate pay $16,000 in cash to B.P. for murdering Glanville. Since $16,000 was less than the agreed upon $18,000 price for murdering Glanville, defendant PHILLIPS arranged for B.P. to receive additional compensation in the form of high-end clothing from defendant PHILLIPS' and defendant CUNNINGHAM's Apollo Signature III clothing boutique in Atlanta, Georgia.

66. In or about mid 2002 to in or about 2003, at various times, as inducement for B.P. to get more involved in PCO business, defendant MAURICE PHILLIPS told B.P. certain details about PCO activity. These details included but were not limited to the following: (1) the PCO was intentionally compartmentalized so that, to a certain extent, PCO members would not necessarily know one another or the particulars of what one another were doing; (2) defendant PHILLIPS stored PCO proceeds at various girlfriends' homes; (3) the PCO distributed cocaine in, among other places, New York, New Jersey, Pennsylvania, and Virginia; and (4) defendant THEOPHUS ORR transported large amounts of PCO cash and cocaine, but was systematically pilfering PCO cocaine.

67. In or about 2003, in Dallas, Texas, defendant RAMON ALVEAR gave defendant MAURICE PHILLIPS a Range Rover automobile.

17

**Sherman Kemp Eludes Baltimore City Police Officers**

On or about September 11, 2002, in Maryland:

68. Defendant SHERMAN KEMP made arrangements to meet R. G., an individual known to the grand jury, for the purpose of distributing cocaine to R. G.

69. Defendant SHERMAN KEMP left his cocaine stash house at 3332 Kenyon Avenue in Baltimore, and entered his Honda automobile.

70. After observing Baltimore city police officers activate the lights and siren on their undercover vehicle in an attempt to pull him over, defendant SHERMAN KEMP rammed the undercover police vehicle and eluded police.

71. Defendant SHERMAN KEMP possessed for distribution approximately three kilograms of PCO cocaine in his stash house at 3332 Kenyon Avenue in Baltimore, Maryland.

**Tyrece Lawrence Possesses PCO Cocaine**

72. On or about September 17, 2002, defendant TYRECE LAWRENCE possessed for distribution approximately two kilograms of PCO cocaine.

**The PCO Hires Driver to Transport Cocaine and Cash Proceeds**

In or about 2003:

73. Defendants MAURICE PHILLIPS and MARK HARRIS sought to hire someone who could ferry, from Maryland to the ACSO in Texas, via tractor-trailer, large amounts of PCO cash, and in turn to ferry ACSO cocaine from Texas to the PCO in Maryland.

74. In Maryland, defendant MARK HARRIS asked R.C., an individual known to the grand jury, who was a member of the PCO, whether defendant MARCO CAMACHO drove tractor-trailers or whether R.C. was acquainted with someone else who did.

75. As a result of defendant MARK HARRIS' request, R.C. recruited defendant MARCO CAMACHO, who had a commercial driver's license, to transport large amounts of money and cocaine to and from Maryland, Pennsylvania, and Texas.

76. Defendant MARK HARRIS and R.C. purchased a truck for defendant MARCO CAMACHO to conduct PCO transportation business.

77. In Maryland, defendant MARK HARRIS, primarily with R.C. and to a lesser extent with defendant MAURICE PHILLIPS, repeatedly packaged in duffel bags approximately $1,000,000 in PCO cash at a time for transport by defendant MARCO CAMACHO to the ACSO in Texas.

78. Defendant MAURICE PHILLIPS told defendant MARK HARRIS that he (defendant PHILLIPS) did not want to be introduced to defendant MARCO CAMACHO.

79. After defendant MARCO CAMACHO met defendant RAMON ALVEAR in Dallas, defendant ALVEAR expressed dissatisfaction with the truck that defendant CAMACHO arrived in because defendant ALVEAR thought that the truck was in ill repair and too conspicuous, and consequently, would attract the attention of law enforcement authorities.

80. In Texas, defendant RAMON ALVEAR and the ACSO arranged for defendant MARCO CAMACHO to obtain a truck that was suitable to ferry PCO cash and ACSO cocaine.

81. Defendant MARCO CAMACHO and ACSO employee, defendant DAVID GARCIA repeatedly transported large amounts of PCO cash from Maryland to Texas, and transported large amounts of ACSO cocaine from Texas to Maryland.

82. Defendant MAURICE PHILLIPS paid defendant DAVID GARCIA

19

approximately $10,000 for each trip that defendant GARCIA made with defendant MARCO CAMACHO.

### Maurice Phillips Solicits the Murder of a Rival Drug Dealer

83. In or about 2003, defendant MAURICE PHILLIPS solicited B.P. to murder a rival New Jersey based drug trafficker.

### Maurice Phillips is Robbed of Drug Proceeds

On or about July 15, 2003:

84. In New Jersey, inside a Range Rover automobile parked outside of his girlfriend's house where he maintained a safe, defendant MAURICE PHILLIPS possessed: (1) a briefcase containing approximately $160,130 in PCO cash; (2) a fanny pack containing approximately $5,201 in PCO cash; and (3) PCO drug records, which defendant PHILLIPS had received from defendant RAMON ALVEAR.

85. Defendant MAURICE PHILLIPS was robbed by defendant SAMUEL MCQUEEN's son, R.M., an individual known to the grand jury, of all the possessions described in Overt Act 84.

86. Defendant MAURICE PHILLIPS solicited B.P. to murder those responsible for robbing him, but later changed his mind because he believed that his activities in New Jersey were garnering too much attention from law enforcement authorities.

87. Defendant MAURICE PHILLIPS told defendant MARK HARRIS, in the presence of R.C., that "more bodies [were] about to drop," as a result of the July 15, 2003, robbery of PCO cash, records and defendant PHILLIPS' Range Rover automobile.

**Maurice Phillips Shoots R.M.**

88. On or about July 30, 2003, defendant MAURICE PHILLIPS shot and wounded R.M.

**J.S. is Recruited to Transport Cocaine for the ACSO**

89. In or about summer 2003, J.S., an individual known to the grand jury, was recruited by Brownsville, Texas, cocaine suppliers to transport via van, controlled substances from Brownsville to the ACSO in metropolitan Dallas.

90. In or about August 2003, on one occasion, defendant DAVID GARCIA, acting as surveillance, drove behind J. S., while J. S. was driving a van containing controlled substances from the Brownsville cocaine suppliers to the ACSO in metropolitan Dallas.

91. From on or about August 21, 2003, through on or about October 19, 2003, on several occasions, defendant DAVID GARCIA opened the gate to the ACSO's warehouse area to allow J. S. to drive inside to deliver cocaine provided by the Brownsville cocaine suppliers.

92. On or about October 25, 2003, J. S. possessed approximately 18 kilograms of cocaine for delivery to the ACSO.

**Maurice Phillips Pays Legal Fees**

93. On or about August 19, 2003, defendant MAURICE PHILLIPS gave $25,000 to an individual who provided it to a friend of B.P.'s to pay the incarcerated B.P.'s legal fees.

**Maurice Phillips Provides Kilograms of Cocaine to
Anthony Ballard and Sherman Kemp**

In or about 2004, in Maryland:

94. Defendant MAURICE PHILLIPS personally delivered kilograms of cocaine to defendants ANTHONY BALLARD and SHERMAN KEMP in Baltimore on a weekly basis

for delivery to PCO customers.

### Cocaine is Supplied from Mexico

95. From on or about September 1, 2003, through on or about April 13, 2004, defendants RAMON ALVEAR and DAVID GARCIA and ACSO employee M.M. repeatedly drove inbound and outbound over the United States/Mexico border to obtain and deliver cocaine.

96. On or about April 13, 2004, at a United States/Mexico border checkpoint north of Laredo, Texas, defendant DAVID GARCIA possessed approximately 2,985 grams of cocaine and $35,400 in a secret compartment in the dashboard of the car that he was driving.

97. On or about March 11, 2004, defendant THEOPHUS ORR possessed approximately $480,000 in PCO cash secreted in two duffel bags which he was transporting via tractor-trailer through Tennessee to defendant RAMON ALVEAR's ACSO in Texas.

98. On or about October 4, 2004, defendant MARK HARRIS provided approximately one-half kilogram of cocaine to R.C.

99. On or about October 12, 2004, defendant MAURICE PHILLIPS arranged to have $50 deposited into the incarcerated B.P.'s prison account.

### Anthony Ballard Hides Cocaine in His Mercury Cougar

In or about November 2004, in Maryland:

100. Defendant ANTHONY BALLARD used the residence and yard located at 1535 Shadyside Road in Baltimore, as an area in which to stash PCO cocaine and money.

101. Defendant ANTHONY BALLARD possessed approximately seven kilograms of PCO cocaine, which was secreted in an unregistered red Mercury Cougar that

defendant ANTHONY BALLARD parked in the yard at 1535 Shadyside Road, Baltimore.

102.  Defendant ANTHONY BALLARD possessed approximately $25,000 in a safe located in the basement of 1535 Shadyside Road in Baltimore.

### Anthony Ballard and Sherman Kemp Deliver PCO Cocaine Proceeds

In or about 2005, in Maryland:

103.  Defendants ANTHONY BALLARD and SHERMAN KEMP repeatedly delivered thousands of dollars in PCO proceeds to various locations, which proceeds were intended to be delivered to defendant MAURICE PHILLIPS.

### Maurice Phillips Deposits Money in a Prison Account

104.  On or about January 18, 2006, defendant MAURICE PHILLIPS deposited approximately $100 into the incarcerated R.S.'s prison account.

### Maurice Phillips and Anthony Ballard Meet with PCO Cocaine Customer

On or about February 9, 2006, in Maryland:

105.  Defendants MAURICE PHILLIPS and ANTHONY BALLARD met with S. G., an individual known to the grand jury, who was a PCO cocaine customer.

106.  Defendant MAURICE PHILLIPS entered S.G.'s Honda and had a conversation with S.G.

107.  Defendant MAURICE PHILLIPS removed a duffel bag from the trunk of S.G.'s Honda and put it into the trunk of defendant PHILLIPS' Chrysler 300. Defendants PHILLIPS and ANTHONY BALLARD left the area in the Chrysler.

108.  Defendants MAURICE PHILLIPS and ANTHONY BALLARD parked

defendant PHILLIPS' Chrysler next to defendant BALLARD'S Mercury Cougar.

109.  Defendant MAURICE PHILLIPS possessed approximately $599,477 in PCO cash, which was secreted in the duffel bag in the trunk of defendant PHILLIPS' Chrysler.

110.  Defendant ANTHONY BALLARD possessed approximately $271,465 in PCO cash, which was secreted in various bags in the trunk of defendant BALLARD'S Mercury Cougar.

111.  On or about February 10, 2006, at his home in Maryland, defendant MAURICE PHILLIPS possessed approximately $26,802 in cash.

### Maurice Phillips and Chanell Cunningham Possess Large Amounts of Cash

On or about August 14, 2006, in Delaware:

112.  Defendant MAURICE PHILLIPS possessed approximately $10,664 in cash, which was located inside his automobile which was parked outside of defendant CHANELL CUNNINGHAM's home, located at 15 Latour Lane in Newark.

113.  Defendant CHANELL CUNNINGHAM possessed approximately $12,000 in cash, which was located inside of her  handbag, her nightstand and a plastic trash bag which was located in a laundry basket, all at 15 Latour Lane in Newark.

114.  The overt acts identified in Counts Four and Thirteen are incorporated here.

All violation of Title 21, United States Code, Section 846.

24

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

1. The overt acts identified in Count One are incorporated here.

2. From at least in or about 1998 through in or about 2007, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

**MAURICE PHILLIPS,**
**a/k/a "Marlon Sampson,"**

engaged in a continuing criminal enterprise in that:

    (a) Defendant violated one or more provisions of subchapter I of Chapter 13 of Title 21, United States Code, which are felonies, and such violations were a part of a continuing series of violations of subchapter I of Chapter 13 of Title 21, United States Code, including but not limited to, the offense contained in Count One of this superseding indictment, and the Overt Acts listed in Count One of this superseding indictment;

    (b) The series of violations described in paragraph (a) were undertaken in concert with five or more persons, known and unknown to the grand jury, with respect to whom defendant occupied a position of the principal, administrator, organizer, or leader of the Phillips Cocaine Organization ("PCO");

    (c) Defendant obtained substantial income and resources from the violations described in paragraphs (a) and (b) above; and

    (d) During the conspiracy set forth in Count One of this superseding indictment, the PCO conspired to distribute and distributed at least 150 kilograms of cocaine.

In violation of Title 21, United States Code, Section 848(b) and (c).

25

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 17, 2002, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### TYRECE LAWRENCE

knowingly and intentionally possessed with intent to distribute 500 grams or more, that is, approximately two kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B).

## COUNT FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 2 through 19 of Count One and the overt acts of Count One of this indictment are incorporated here.

2. Beginning in or before 1999, the exact date being unknown to the grand jury, and continuing until in or about 2007, in the Eastern District of Pennsylvania and elsewhere, defendants

### MAURICE PHILLIPS,
### a/k/a "Marlon Sampson," and
### CHANELL CUNNINGHAM

conspired and agreed, together and with others known and unknown to the grand jury:

(a) to conduct financial transactions affecting interstate and foreign commerce which involved the proceeds of specified unlawful activity, that is, the distribution of, possession with intent to distribute, and conspiracy to distribute cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, knowing that property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were intended to promote the carrying on of such specified unlawful activity; in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

(b) to conduct financial transactions affecting interstate and foreign commerce which involved the proceeds of specified unlawful activity, that is, the distribution of, possession with intent to distribute, and conspiracy to distribute cocaine in violation of Title 21, United States Code, Sections 841(a)(1) and 846, knowing that property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the

27

transactions were intended to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(c) to knowingly engage and attempt to engage in monetary transactions affecting interstate and foreign commerce in criminally derived property of a value greater than $10,000 derived from specified unlawful activity, that is, the distribution of, possession with intent to distribute, and conspiracy to distribute cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, in violation of Title 18, United States Code, Section 1957.

## MANNER AND MEANS OF THE CONSPIRACY

It was part of the conspiracy that:

3.   Defendant MAURICE PHILLIPS and CHANELL CUNNINGHAM were members of the Phillips Cocaine Organization ("PCO"), a multi-state multi-million dollar cocaine distribution organization based on the United States' eastern seaboard, whose unlawful drug trafficking activities are more fully described in Count One of this indictment.

4.   Defendants MAURICE PHILLIPS and CHANELL CUNNINGHAM derived significant income, primarily in the form of cash proceeds from the PCO's unlawful distribution of cocaine, which income they sought to make appear legitimate in order to avoid scrutiny of law enforcement officials and others.

5.   In order to make their unlawful drug trafficking income appear legitimate and to reap the benefits of their substantial ill-gotten gains, defendants MAURICE PHILLIPS and CHANELL CUNNINGHAM, among other things, conspired with and employed professional money launderer Chineta Glanville and used other individuals, including relatives and friends,

known and unknown to the grand jury, to assist them in laundering and secreting the proceeds from the PCO's unlawful distribution of cocaine.

6. Defendants MAURICE PHILLIPS and CHANELL CUNNINGHAM provided cash PCO drug proceeds to Glanville, which Glanville deposited into bank accounts which she maintained in various business and alias names. Glanville would, in turn, remit funds to the designees of PHILLIPS and CUNNINGHAM in order to accomplish the purchase and financing of, and payments toward, expensive homes, investment properties, luxury automobiles and extravagant parties for PHILLIPS and CUNNINGHAM. These transactions were accomplished by engaging in convoluted financial transactions designed to conceal the nature, location, source, ownership and control fo their criminal proceeds, and enabled PHILLIPS and CUNNINGHAM to maintain a lavish lifestyle.

7. Glanville also created new businesses and opened new bank accounts for MAURICE PHILLIPS and CHANELL CUNNINGHAM to facilitate the laundering of PCO drug proceeds for PHILLIPS and CUNNINGHAM, and used aliases to purchase, among other things, expensive homes and automobiles on behalf of PHILLIPS and CUNNINGHAM.

8. Glanville created false federal income tax returns for defendant MAURICE PHILLIPS which defendant PHILLIPS used to obtain loans to purchase investment property and to legitimize the PCO drug proceeds, with which defendant PHILLIPS used to repay the fraudulently obtained loans.

9. From in or about 1999 to in or about 2007, defendants MAURICE PHILLIPS and CHANELL CUNNINGHAM either filed federal tax returns falsely identifying modest amounts of income or failed to file any tax returns whatsoever.

10. In addition to using Chineta Glanville to launder their drug proceeds, defendants MAURICE PHILLIPS and CHANELL CUNNINGHAM also used their relatives and other individuals to open bank accounts and to deposit PCO cash drug proceeds in order to launder these proceeds. PHILLIPS and CUNNINGHAM did this by repeatedly engaging in, and causing others to engage in, convoluted financial and monetary transactions, including but not limited to, the structuring of cash deposits, the transfer of funds from one account to another, and the purchase of official bank checks, designed to disguise the nature, location, source, ownership and control of the criminal proceeds.

11. Defendant MAURICE PHILLIPS opened and used lines of credit to make purchases of assets and paid off these lines of credit with PCO cash drug proceeds and money orders and checks obtained with such criminal proceeds, as well as with funds obtained from defendant MARK HARRIS.

12. Defendants MAURICE PHILLIPS and CHANELL CUNNINGHAM concealed their ownership and control of real and personal property, which they purchased with drug proceeds by, among other things, placing such assets in the names of nominees, including aliases of Glanville, family members and businesses.

13. Defendants MAURICE PHILLIPS and CHANELL CUNNINGHAM, despite having access to conventional checking accounts, repeatedly purchased money orders with cash drug proceeds, and deposited and caused the deposit of these money orders into other bank accounts, in order to pay personal bills, thereby disguising the nature, source, ownership, and control of such proceeds.

14. Defendants MAURICE PHILLIPS and CHANELL CUNNINGHAM also

made payments, including cash payments, to attorneys representing co-conspirators and other

drug traffickers to engender loyalty, in an attempt to evade detection by law enforcement of PCO

activities, thereby promoting the drug trafficking activities of the PCO.

## OVERT ACTS

In furtherance of the conspiracy, defendants MAURICE PHILLIPS and

CHANELL CUNNINGHAM, and others known and unknown to the grand jury, committed the

following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

### The Introduction of Glanville

1.   In or about 2000, defendant CHANELL CUNNINGHAM introduced

defendant MAURICE PHILLIPS to Chineta Glanville for the purpose of having Glanville help

both defendants PHILLIPS and CUNNINGHAM launder PCO drug proceeds.

### The Purchase of the Sicklerville House

2.   In or about May 2000, defendant CHANELL CUNNINGHAM opened a joint

checking account at First Union Bank (now Wachovia Bank) in her own name and in the name

"Phoenix Terrell," an alias used by Chineta Glanville.  The account was opened to facilitate the

purchase with PCO drug proceeds by defendants MAURICE PHILLIPS and CHANELL

CUNNINGHAM of a new house which was being constructed at 137 Mullen Drive in

Sicklerville, New Jersey ("the Sicklerville house").

3.   On or about July 6, 2000, approximately $16,000 was withdrawn from

defendant CHANELL CUNNINGHAM's and Phoenix Terrell's (Glanville's) joint checking

account at First Union Bank and was combined with other funds to purchase a First Union Bank

official bank check in the amount of $30,225, which was used to pay for a portion of construction

upgrades at defendants MAURICE PHILLIPS' and CUNNINGHAM's Sicklerville house.

4.   On or about July 7, 2000, Chineta Glanville, posing as "Phoenix Terrell," purchased a First Union Bank official bank check in the amount of $18,000, which was used as a down payment for the construction of the Sicklerville house.  Funds in the amount of $14,000, used toward the purchase of this $18,000 check, were withdrawn on July 7, 2000 from a First Union Bank account in the name of defendant CHANELL CUNNINGHAM and Phoenix Terrell (Glanville).

5.   On or about September 11, 2000, Chineta Glanville paid for a construction upgrade for defendants MAURICE PHILLIPS' and CHANELL CUNNINGHAM's Sicklerville house by executing a $7,610 check drawn on Glanville's Asante LeGrande account.

6.   On or about November 22, 2000, at the settlement on defendants MAURICE PHILLIPS' and CHANELL CUNNINGHAM's Sicklerville house, Chineta Glanville (posing as "Phoenix Terrell") purchased the Sicklerville house on behalf of defendants MAURICE PHILLIPS and CHANELL CUNNINGHAM and provided two official bank checks, dated November 20, 2000, totaling $50,000 that were funded from withdrawals from Glanville's Asante LeGrande account and a Lindsay & Co. Resource Mortgage Group ("Lindsay") account, another company owned by Glanville.

7.   In or about May 2002, defendant MAURICE PHILLIPS gave his and defendant CHANELL CUNNINGHAM's Sicklerville house to defendant PHILLIPS' parents, who began to live there.

### The Incorporation of Blue Diamond Investment Group

8.   In or about August or September 2000, Chineta Glanville incorporated Blue

Diamond Investment Group, Ltd. ("BDIG"), for the purpose of providing defendants MAURICE

PHILLIPS and CHANELL CUNNINGHAM with an investment entity through which they could

launder PCO drug proceeds.

      9.   In or about December 2000, bank accounts in the name of BDIG (d/b/a

"Apollo Signature") were opened at First Union Bank.  Defendant CHANELL CUNNINGHAM

was listed as a signatory on a signature card dated January 4, 2001.

      10. On or about December 15, 2000, a Commerce Bank official bank check in the

amount of $17,000, payable to defendant CHANELL CUNNINGHAM, was purchased with

funds drawn on Glanville's Lindsay account, and was deposited into the BDIG account at First

Union Bank.

      11. In or about July 2001, an Advanta credit card account was opened in the name

of Blue Diamond Investment Group, and defendants MAURICE PHILLIPS and CHANELL

CUNNINGHAM used that credit card account (later known as "Never Say Never") through at

least 2006 for the personal expenditures, periodically making payments through 2006 on that

account with multiple money orders purchased with cash.

### The Purchase of Franchise "Apollo Signature"

      12. In or about summer 2001 through early 2002, defendants MAURICE

PHILLIPS and CHANELL CUNNINGHAM, utilizing the name BDIG, d/b/a Apollo Signature

III, purchased a franchise of high-end New York City clothing boutique Apollo Signature, which

they planned to open in Atlanta, Georgia.

      13. In or about summer 2001 through early 2002, defendant MAURICE

PHILLIPS paid at least $800,000 in cash and provided a $50,000 official bank check to the

proprietors of Apollo Signature, which money was obtained from PCO cocaine trafficking. This money was used to pay for the inventory and fixtures at the new Apollo Signature franchise ("Apollo Signature III"), which defendants CHANELL CUNNINGHAM and PHILLIPS opened in Atlanta, Georgia.

14. On or about August 13, 2001, defendant MAURICE PHILLIPS was added as a signatory and was noted as president on the BDIG's business checking bank account at First Union Bank.

15. From in or about early 2001, through in or about October 2002, significant amounts of cash were deposited into defendants MAURICE PHILLIPS' and CHANELL CUNNINGHAM's BDIG bank accounts.

16. From in or about spring 2001, through in or about mid-2002, checks drawn on defendants MAURICE PHILLIPS' and CHANELL CUNNINGHAM's BDIG bank account were used to pay, among other things, rent and other expenses related to Apollo Signature III.

### The Purchase of the East Orange, NJ Apartment Building

17. In or about June and July 2001, false income tax returns generated by Chineta Glanville for tax years 1999 and 2000 for defendant MAURICE PHILLIPS were used by MAURICE PHILLIPS to obtain a mortgage to purchase a $250,000 nine-unit apartment building at 91 Halsted Street in East Orange, New Jersey.

18. On or about July 16, 2001, Chineta Glanville purchased a $76,750 official bank check with funds from her Lindsay account at Commerce Bank, which check was presented by defendant MAURICE PHILLIPS at closing as part of his down payment for the purchase of the apartment building at 91 Halsted Street in East Orange, New Jersey.

19. On or about July 17, 2001, defendant MAURICE PHILLIPS purchased the apartment building at 91 Halsted Street in East Orange, New Jersey for approximately $250,000.

## Purchases of High-End Automobiles and Trucks

20. In or about late February to in or about early March 2001, defendants MAURICE PHILLIPS and CHANELL CUNNINGHAM purchased a 2002 Lexus SC430 automobile from Charm City Motors in Maryland. Chineta Glanville's Lindsay & Co. Resource Mortgage Group (renamed Dymond Capital, LLC) was the registered owner of the automobile. Dymond Capital was listed as the lienholder of the automobile.

21. On or about April 24, 2001, approximately $4,000 was deposited into a custodial bank account established by defendant MAURICE PHILLIPS for his daughter.

22. On or about April 25, 2001, approximately $6,000 was deposited into the custodial bank account established by defendant MAURICE PHILLIPS for his daughter.

23. In or about April 2001, approximately $9,500 was withdrawn from the custodial bank account established by defendant MAURICE PHILLIPS, to purchase an official bank check for $9,500 made payable to Glanville's Lindsay & Co. Resource Mortgage Group.

24. From on or about April 23, 2001, through on or about April 25, 2001, three deposits totaling $30,500 (including the $9,500 bank check purchased with funds from the custodial account established by defendant MAURICE PHILLIPS) were made into Glanville's Lindsey bank account at Commerce Bank.

25. In or about April 2001, $22,500 in checks payable to cash were drawn on the same Lindsay account at Commerce Bank and ultimately used to purchase official bank checks made payable to Charm City Motors.

26. In or about April 2001, a $7,000 check made payable to cash was drawn on Glanville's Asante LeGrande bank account and ultimately used to purchase an official bank check made payable to Charm City Motors.

27. On or about April 27, 2001, defendant MAURICE PHILLIPS purchased a 2001 Mercedes-Benz CL 500 from Charm City Motors.  The registered owner of the automobile was Glanville's Lindsay & Co. Resource Mortgage Group.

28. On or about May 18, 2001 through April, 2002, Glanville paid $10,920 in premiums with checks drawn on her Asante LeGrande and Dymond Capital bank accounts in order to insure defendant CHANELL CUNNINGHAM's 2002 Lexus SC430 and defendant MAURICE PHILLIPS' 2001 Mercedes-Benz CL 500.  The money for the premiums was provided to Glanville by defendant PHILLIPS.

29. In or about late 2000 to in or about early 2001, Chineta Glanville generated false federal income tax returns and false W-2s for defendant MAURICE PHILLIPS, which PHILLIPS used in order to obtain financing to purchase two Mack trucks for a total purchase price of approximately $195,000.

30. In or about late 2000 to in or about early 2001, defendant MAURICE PHILLIPS purchased two Mack trucks, one of which he subsequently sold to PCO cocaine supplier ACSO leader Ramon Alvear, who is charged elsewhere in this indictment.

### Purchase of the New Jersey residences

31. Between on or about December 18, 2000 and on or about April 16, 2001, defendant MAURICE PHILLIPS purchased the house at 142 Maple Avenue in Montclair, New Jersey and the house at 168 Orange Street in Bloomfield, New Jersey for a total of approximately

$243,600, after having used four cashier's checks totaling approximately $80,000 as a down payment.

### The Uncompleted Purchase of a Residence in Atlanta, Georgia

32. On or about April 19, 2002, a bank account was opened in the name of Chineta Glanville's alias, "Phoenix Terrell," at First Union Bank, which bank account was used to facilitate the intended purchase of a new home by defendants MAURICE PHILLIPS and CHANELL CUNNINGHAM in the Atlanta, Georgia metro1politan area.

33. From on or about May 8, 2002, through on or about May 28, 2002, structured cash deposits totaling approximately $61,429, each deposit being less than $10,000, were deposited into defendants MAURICE PHILLIPS' and CHANELL CUNNINGHAM's two BDIG bank accounts at First Union Bank.  These deposits were PCO cash drug proceeds.

34. On or about May 30, 2002, two transfers of approximately $25,000 each were made from defendants MAURICE PHILLIPS' and CHANELL CUNNINGHAM's two BDIG bank accounts into a bank account maintained by Chineta Glanville in the name "Phoenix Terrell."

35. In or about April to in or about May 2002, four checks were drawn on the Phoenix Terrell bank account at First Union Bank and used toward the intended purchase of the new home located in the Atlanta, Georgia metropolitan area, that is, at 3543 Crown Peak Court in Suwanee, Georgia, which defendants MAURICE PHILLIPS and CHANELL CUNNINGHAM were in the process of purchasing.

### The Payment of Bills with Money Orders

36. From in or about 2001, through in or about at least 2006, despite having

several different checking accounts, defendants MAURICE PHILLIPS and CHANELL

CUNNINGHAM purchased numerous money orders in cash to pay, among other things, credit

card bills and bills.

### Purchase and Upgrades at the Newark, Delaware Residence

37. On or about May 11, 2005, defendant CHANELL CUNNINGHAM paid

$30,000 for builder upgrades at a new home that she was having constructed at 15 Latour Lane in

Newark, Delaware.  The upgrades were paid for with a Citizens Bank official bank check, which

was purchased with a check from defendant CUNNINGHAM's grandfather, H.G., a person

known to the grand jury, and funded with PCO cash drug proceeds that had been deposited into

his (H.G.'s) account.

38. On or about December 29, 2005, defendant CHANELL CUNNINGHAM

purchased a home at 15 Latour Lane in Newark, Delaware, in the name of a nominee, that is,

H.G., her grandfather.  Defendant CUNNINGHAM made an approximately $83,562.03 partial

payment on the Latour Lane residence with a Citizens Bank official bank check that was

purchased with a check drawn on her grandfather's account, traceable to PCO cash drug proceeds

deposited into his account.

39. On or about August 14, 2006, defendant CHANELL CUNNINGHAM falsely

told law enforcement officers that her grandfather owned the 15 Latour Lane residence and that

she paid rent to him with the help of her boyfriend.

### The Purchase of the Properties in Darby, Pennsylvania

40. In the weeks before and including in or about January 2006, defendant CHANELL CUNNINGHAM facilitated the purchase by defendant MAURICE PHILLIPS of three adjoining properties at 420, 422 and 430 Main Street in Darby, Pennsylvania.

41. In or about January 2006, defendant MAURICE PHILLIPS and CHANELL CUNNINGHAM caused the purchase of several official bank checks with funds traceable to PCO cash drug proceeds which had been deposited into defendant CUNNINGHAM's grandfather's and mother's bank accounts and other accounts. Defendant PHILLIPS used these checks toward the purchase of the three adjoining properties at 420, 422 and 430 Main Street in Darby, Pennsylvania.

42. On our about January 26, 2006, defendant MAURICE PHILLIPS purchased three adjoining properties, that is, 420, 422 and 430 Main Street in Darby, Pennsylvania.

### Purchase of a House in South Philadelphia

43. In or about spring 2006, defendant CHANELL CUNNINGHAM purchased two official bank checks totaling $20,000, with funds on deposit in her grandfather's and mother's bank accounts, which were funded with significant PCO cash drug proceeds deposited into those accounts. Defendant CUNNINGHAM used the $20,000 as partial payment for a house in South Philadelphia.

44. On or about May 19, 2006, defendant CHANELL CUNNINGHAM purchased a house located at 2110 Federal Street in Philadelphia, Pennsylvania, for $20,000 and another

additional $50,000 to the seller promised in cash, which cash was never received by the seller.

## **Purchase of Airline Tickets**

45. On or about June 10, 2005, defendant CHANELL CUNNINGHAM purchased airline tickets for defendant MAURICE PHILLIPS and another individual and charged the tickets on her American Express account.

All in violation of Title 18, United States Code, 1956(h).

## COUNTS FIVE THROUGH SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

  1. Paragraphs 2 through 19 of Count One, paragraphs 3 through 14 of Count

Four, and the overt acts of Counts One and Four of this indictment are incorporated here.

  2. On or about the dates set forth in the chart below, in the Eastern District of

Pennsylvania and elsewhere, defendants

**MAURICE PHILLIPS,**
**a/k/a "Marlon Sampson," and**
**CHANELL CUNNINGHAM**

knowingly conducted, and aided and abetted and willfully caused the conducting of, the

following financial transactions affecting interstate commerce:

| Count | Date of Check | Amount | Financial Transaction |
|---|---|---|---|
| 5 | Jan. 25, 2006 | $15,000.00 | Citizens Bank official check payable to Febo Nardi |
| 6 | Jan. 26, 2006 | $25,000.00 | Wachovia Bank official check payable to Febo Nardi |

  3. When conducting, aiding and abetting, and willfully causing the conducting of,

the financial transactions described in paragraph 2 above, defendants MAURICE PHILLIPS and

CHANELL CUNNINGHAM knew that the property involved in those financial transactions

represented the proceeds of some form of unlawful activity.

  4. The financial transactions described in paragraph 2 above involved the

proceeds of a specified unlawful activity, that is, the distribution of, possession with intent to

distribute, and conspiracy to distribute cocaine, in violation of Title 21, United States Code,

Sections 841(a)(1) and 846, and defendants MAURICE PHILLIPS and CHANELL

CUNNINGHAM acted with the intent to conceal and disguise the nature, location, source,

ownership and control of proceeds of a specified unlawful activity.

41

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNTS SEVEN THROUGH TEN

**THE GRAND JURY FURTHER CHARGES THAT:**

  1. Paragraphs 2 through 19 of Count One, Paragraphs 3 through 14 of Count

Four, and the overt acts of Counts One and Four of this indictment are incorporated here.

  2. On or about the dates set forth in the chart below, in the Eastern District of

Pennsylvania and elsewhere, defendant

### CHANELL CUNNINGHAM

knowingly conducted, and aided and abetted and willfully caused the conducting of, the

following financial transactions affecting interstate commerce:

| Count | Date of Check | Amount | Financial Transaction |
|-------|---------------|--------|------------------------|
| 7 | January 3, 2006 | $13,511.26 | Wachovia Bank official check payable to American Express |
| 8 | May 19, 2006 | $14,000.00 | Wachovia Bank official check payable to Class Abstract |
| 9 | May 19, 2006 | $6,000.00 | Citizens Bank official check payable to Class Abstract |
| 10 | March 2, 2007 | $4,270.00 | Commerce Bank check, account of N.S., payable to "Candid Casuals" |

  3. When conducting, and aided and abetted and willfully causing the conducting

of, the financial transactions described in paragraph 2 above, defendant CHANELL

CUNNINGHAM knew that the property involved in those financial transactions represented the

proceeds of some form of unlawful activity.

  4. The financial transactions described in paragraph 2 above, involved the

proceeds of a specified unlawful activity, that is, the distribution of, possession with intent to

distribute and conspiracy to distribute cocaine in violation of Title 21, United States Code,

Sections 841(a) and 846, and defendant CHANELL CUNNINGHAM acted with the intent to

43

conceal and disguise the nature, location, source, ownership and control of proceeds of specified unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNTS ELEVEN THROUGH TWELVE

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 2 through 19 of Count One, Paragraphs 3 through 14 of Count Four, and the overt acts of Counts One and Four of this indictment are incorporated here.

2. On or about the dates set forth below, in the Eastern District of Pennsylvania and elsewhere, defendant

### CHANELL CUNNINGHAM

knowingly engaged in, and willfully caused the engaging in, a monetary transaction affecting interstate commerce in criminally derived property of a value greater than $10,000, and such property was derived from specified unlawful activity, that is, the distribution of, possession with intent to distribute, and conspiracy to distribute cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846:

| Count | Date of Check | Amount | Monetary Transaction |
|-------|---------------|--------|----------------------|
| 11 | May 11, 2005 | $30,000.00 | Citizens Bank official check payable to Louis Capano Builders |
| 12 | Dec. 29, 2005 | $83,562.03 | Citizens Bank official check payable to Delcollo and Werb |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT THIRTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1. From in or about spring 2002, through in or about autumn 2002, in the Eastern District of Pennsylvania and elsewhere, defendant

**MAURICE PHILLIPS,**
**a/k/a "Marlon Sampson,"**

knowingly and willfully conspired and agreed with persons known and unknown to the grand jury, to travel and cause others to travel in interstate commerce, that is, from outside of Pennsylvania to Pennsylvania, with the intent that a murder be committed in violation of the laws of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Statute 2502, as consideration for the receipt of something of pecuniary value, resulting in the deaths of Chineta Glanville and Dane King, in violation of Title 18, United States Code, Section 1958.

### MANNER AND MEANS

It was part of the conspiracy that:

2. Defendant MAURICE PHILLIPS, the leader of the PCO, further and more particularly described in Count One of the Indictment, arranged to have PCO money launderer Chineta Glanville murdered to prevent her from cooperating with federal and state law enforcement authorities. Defendant MAURICE PHILLIPS solicited B.P., previously referred to in Count One of the indictment, to murder Glanville.

3. Federal Express employee R.S., a person known to the grand jury, obtained a Federal Express uniform, hat and package for B.P., to enable B.P. to pose as a Federal Express employee to gain entrance to Chineta Glanville's house for the purpose of murdering Glanville.

4. R.S. obtained a firearm for B.P. to use to murder Chineta Glanville.

46

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its object, defendant MAURICE PHILLIPS and others known and unknown to the grand jury committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1. In or about June 2002, L.S.'s wife, F.S., a person known to the grand jury, told defendant MAURICE PHILLIPS and Chanell Cunningham that Chineta Glanville told F.S. that she (Glanville) was cooperating with federal law enforcement authorities and that Glanville, L.S., F.S. and Cunningham and PHILLIPS were all going to jail.

In or about June 2002:

2. Defendant MAURICE PHILLIPS telephoned B.P. in Tennessee, and requested that B.P. come to New Jersey to meet with defendant PHILLIPS to discuss solving a problem.

3. Defendant MAURICE PHILLIPS told B.P. that Chineta Glanville was cooperating with law enforcement authorities in a money laundering investigation of defendant PHILLIPS and that he (defendant PHILLIPS) believed that Glanville was going to testify against him.

4. Defendant MAURICE PHILLIPS solicited B.P. to murder Glanville.

5. At the direction of defendant MAURICE PHILLIPS, B.P. flew from Tennessee to New Jersey and met with defendant PHILLIPS to plan the specifics of the Chineta Glanville murder.

6. Defendant MAURICE PHILLIPS told B.P. that he (defendant PHILLIPS) would pay B.P. $18,000 in cash to murder Glanville.

7. Defendant MAURICE PHILLIPS drove B.P. from New Jersey to the vicinity

of Chineta Glanville's home in suburban Philadelphia, located at 7900 Louise Lane in Wyndmoor, Pennsylvania, for the purpose of familiarizing B.P. with the area where Glanville's home was located.

      8. Defendant MAURICE PHILLIPS told B.P. that Chineta Glanville was at home if the garage door at her residence was open.

      9. On or about June 23, 2002, in accordance with the plan devised by defendant MAURICE PHILLIPS, B.P. drove from Tennessee to New Jersey to murder Chineta Glanville for defendant PHILLIPS.

      On or about June 24, 2002:

      10. Defendant MAURICE PHILLIPS gave B.P. further instructions to murder Chineta Glanville. Defendant PHILLIPS told B.P., among other things, that B.P. had to murder Glanville on June 25, 2002, during a specific time frame, because defendant PHILLIPS had arranged an alibi for the time that the murder was scheduled to take place.

      11. Defendant MAURICE PHILLIPS drove B.P. from New Jersey to the vicinity of Chineta Glanville's Wyndmoor residence, where they drove past Glanville's home as part of the final planning stages for Glanville's murder.

      12. After returning from the vicinity of Chineta Glanville's Wyndmoor residence, defendant MAURICE PHILLIPS and B.P. went to meet R.S., a Federal Express employee, at R.S.'s place of employment, the Federal Express facility in Kenilworth, New Jersey, so that R.S. could provide them with a firearm to commit the Chineta Glanville murder, and a Federal Express uniform, hat and package that would serve as a disguise for B.P. R.S. did not have the items at that time.

48

13. At the time that B.P. went to bed at defendant MAURICE PHILLIPS' residence in New Jersey, B.P. did not have the firearm necessary to commit the Glanville murder or a Federal Express uniform, hat or package.

14. During the morning hours, in New Jersey, defendant MAURICE PHILLIPS gave a firearm, Federal Express uniform, hat, and empty package to B.P.

15. During the morning hours, B.P. drove from defendant MAURICE PHILLIPS' residence in New Jersey to Chineta Glanville's Wyndmoor, Pennsylvania residence to murder Glanville.

16. During the morning hours, at defendant MAURICE PHILLIPS' direction, B.P. posed as a Federal Express employee by wearing a Federal Express uniform and hat, entered Chineta Glanville's residence after telling Glanville's godson, Dane King, that B.P. had a package for Glanville, murdered Chineta Glanville by shooting her twice in the back of the head, and then murdered Dane King by repeatedly shooting him.

17. While B.P. was murdering Chineta Glanville and Dane King, defendant MAURICE PHILLIPS was in the Roselle, New Jersey Township building, as part of the scheme to murder Chineta Glanville, so that he would be observed by law enforcement authorities.

18. In or about July 2002, defendant MAURICE PHILLIPS instructed B.P. to go to Baltimore, Maryland, to receive payment for having successfully murdered Chineta Glanville.

19. In or about July 2002, in Baltimore, Maryland, B.P. received $16,000 in cash from defendant MAURICE PHILLIPS, through one of defendant PHILLIPS' employees, as payment for having murdered Chineta Glanville.

From in or about July to in or about December, 2002:

20. After B.P. complained to defendant MAURICE PHILLIPS that defendant PHILLIPS had only paid B.P. $16,000 for murdering Chineta Glanville rather than the agreed-upon $18,000, defendant PHILLIPS told B.P. that the difference would be provided to B.P. in the form of high-end clothing from defendant PHILLIPS' and Chanell Cunningham's Apollo Signature III clothing boutique.

21. B.P. received high-end clothing from defendant MAURICE PHILLIPS' and Chanell Cunningham's Apollo Signature III clothing boutique as additional payment for having murdered Chineta Glanville.

All in violation of Title 18, United States Code, Section 1958.

## COUNT FOURTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

      1. Paragraphs 2 through 4 and the Overt Acts of Count Thirteen of this indictment are incorporated here.

      2. From on or about June 23, 2002, through on our about June 25, 2002, in the Eastern District of Pennsylvania and elsewhere, defendant

**MAURICE PHILLIPS,**
**a/k/a "Marlon Sampson,"**

knowingly and willfully caused another, that is, B.P., to travel in interstate commerce, that is, from outside of Pennsylvania to Pennsylvania, with the intent that a murder be committed in violation of the laws of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Section 2502, as consideration for the receipt of something of pecuniary value and as consideration for a promise and agreement to pay something of pecuniary value, resulting in the deaths of Chineta Glanville and Dane King on or about June 25, 2002.

      In violation of Title 18, United States Code, Section 1958.

## COUNT FIFTEEN

**THE GRAND JURY FURTHER CHARGES THAT**:

      1. Paragraphs 2 through 4 and the Overt Acts of Count Thirteen of this indictment are incorporated here.

      2. On or about June 25, 2002, in the Eastern District of Pennsylvania and elsewhere, defendant

**MAURICE PHILLIPS,**
**a/k/a "Marlon Sampson,"**

murdered, and aided and abetted, and willfully caused the murder of, Chineta Glanville, as defined in Title 18, United States Code, Section 1111, that is, an unlawful, willful, deliberate, malicious, and premeditated killing with malice aforethought, to prevent communication by Chineta Glanville to a law enforcement officer or judge of the United States of information relating to the commission of federal offenses, that is, conspiracy to distribute cocaine and conspiracy to commit money laundering, as charged in Counts One and Four of this indictment.

      All in violation of Title 18, United States Code, Sections 2, 1111(a), and 1512(a)(1)(C), (a)(3)(A).

## NOTICE OF FORFEITURE NO. 1

**THE GRAND JURY FINDS PROBABLE CAUSE THAT**:

      1.    As a result of the violations of Title 21, United States Code, Sections 841(a)(1) and 846, set forth in this indictment, defendants

**MAURICE PHILLIPS,**
**a/k/a "Marlon Sampson,"**
**CHANELL CUNNINGHAM,**
**MARK HARRIS,**
**RAMON ALVEAR,**
**a/k/a "Little Ray,"**
**DAVID GARCIA,**
**a/k/a "Twenty,"**
**SAMUEL MCQUEEN,**
**a/k/a "Grandpop,"**
**a/k/a "Old Dude,"**
**THEOPHUS ORR,**
**MARCO CAMACHO,**
**TYRECE LAWRENCE,**
**ANTHONY BALLARD,**
**a/k/a "Buzzard,"**
**a/k/a "Jerome Lane," and**
**SHERMAN KEMP,**
**a/k/a "Goose,"**
**a/k/a "Hoseay Sachez,"**
**a/k/a "Lil Dog"**

shall forfeit to the United States of America:

      a.    any property constituting, or derived from proceeds obtained, directly or indirectly, as the result of the violation of Title 21, United States Code, Sections 841(a)(1) and 846, as charged in this indictment;

      b.    any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the violation of Title 21, United States Code, Sections 841(a)(1) and 846, as charged in this indictment:

Such property shall include, but not be limited to the following:

(1) <u>Money Judgment</u>: A sum of money equal to at least $31,000,000 in United States currency, representing the amount of property/proceeds obtained as a result of the violations of Title 21, United States Code, Sections 841(a)(1) and 846, for which the defendants are jointly and severally liable.

(2) <u>Bank Accounts</u>: All funds under the control of defendants MAURICE PHILLIPS and CHANELL CUNNINGHAM in the following accounts:

| **BANK OF AMERICA** | |
| --- | --- |
| **ACCOUNT NAME (AND/OR INITIALS)** | **ACCOUNT NUMBER** |
| E.P.<br>Maurice Phillips | XXXXX2249 |
| **CITIZENS BANK** | |
| H.G. | XXXXXX0176 |
| H.G. | XXXXXX9023 |
| H.G., Trustee for G.G. | XXXXXX1973 |
| H.G., Trustee for G.G. | XXXXXX9467 |
| **PNC BANK** | |
| Maurice Phillips | XXXXXX1615 |
| **WACHOVIA BANK** | |
| A.P.<br>Maurice Phillips, Custodian | XXXXXXXXX8427 |
| Ahom, Inc. | XXXXXXXXX0038 |
| Ahom, Inc.<br>Escrow - Maurice Phillips, Agent | XXXXXXXXX7120 |
| Chanell Cunningham | XXXXXXXXX8008 |

| ACCOUNT NAME (AND/OR INITIALS) | ACCOUNT NUMBER |
|---|---|
| Maurice Phillips A.P. | XXXXXXXXX8038 |
| Maurice Phillips | XXXXXXXXX4604 |
| Phoenix Terrell | XXXXXXXXX2628 |

(3) <u>Personal Property</u>: One 2004 Chrysler 300M registered to Maurice Phillips bearing Vehicle Identification Number 2C3HE66G64H692685.

(4) <u>Real Property</u>: The following real property:

(A) The real property known as 13617 Hollow Log Drive, Upper Marlboro, Maryland, titled to Angelique M. Lewis and defendant MAURICE C. PHILLIPS, and further described in the land records of Prince George's County, Maryland, in Liber 18014, Folio 564.

(B) The real property known as 137 Mullen Drive, Sicklerville, New Jersey, titled to "Phoenix J. Terrell," and further described in the land records of Camden County, New Jersey, on December 1, 2000, at Volume 5127, Page 657.

(C) The real property known as 56 Woodland Drive, Roselle, New Jersey, New Jersey, titled to defendant MAURICE C. PHILLIPS, and further described in the land records of Union County, New Jersey, on July 21, 1999, at Volume 4844, Page 155.

(D) The real property known as 91 Halsted Street, East Orange, New Jersey, titled to defendant MAURICE C. PHILLIPS, and further described in the land records of Essex County, New Jersey, on August 4, 2001, at Volume 5817, Page 35.

(E) The real property known as 168 Orange Street, Bloomfield, New Jersey, titled to defendant MAURICE C. PHILLIPS, and further described in

55

the land records of Essex County, New Jersey, on April 16, 2001, at Volume 5762, Page 406.

(F) The real property known as 142 Maple Avenue, Montclair, New Jersey, titled to defendant MAURICE C. PHILLIPS, and further described in the land records of Essex County, New Jersey, on April 16, 2001, at Volume 5762, Page 403.

(G) The real property known as 420 Main Street, Darby, Pennsylvania, titled to defendant MAURICE C. PHILLIPS, and further described in the land records of Delaware County, Pennsylvania, on February 6, 2006, at Volume 3724, Page 243.

(H) The real property known as 422 Main Street, Darby, Pennsylvania, titled to defendant MAURICE C. PHILLIPS, and further described in the land records of Delaware County, Pennsylvania, on February 6, 2006, at Volume 3724, Page 247.

(I) The real property known as 430 Main Street, Darby, Pennsylvania, titled to defendant MAURICE C. PHILLIPS, and further described in the land records of Delaware County, Pennsylvania, on February 6, 2006, at Volume 3724, Page 250.

(J) The real property known as 15 LaTour Lane, Newark, Delaware, titled to Herbert Q. Gray, and further described in the land records of New Castle County, Delaware, on January 20, 2006, at Instrument Number 20060120-0006896.

(K) The real property known as 2110 Federal Street, Philadelphia, Pennsylvania, titled to defendant CHANELL CUNNINGHAM, and further described in the records of the Office of the Recorder of Deeds for Philadelphia County, Pennsylvania, on June 20, 2006, at Document No. 51466932.

(N) The real property known as 1015 East Washington Street, High Point, North Carolina, titled to defendant MAURICE PHILLIPS and Arnold Phillips, and further

described in the land records of Guilford County, North Carolina, on April 9, 2007, at Deed Book 6704, Page 801.

(O) The real property known as 4111 Boarman Drive, Baltimore, Maryland, titled to defendant MAURICE PHILLIPS and further described in the land records of Baltimore County, Maryland, on September 6, 2007, at Volume 10014, Page 404.

(5) Other:

(A)  Approximately $20,000 on deposit in an escrow account maintained by Kettler, McLean, Virginia, on behalf of defendant MAURICE PHILLIPS for the purchase of a condominium in Largo, Maryland.

(B) All funds (approximately $167,000 net value on September 5, 2007) on deposit with Fidelity Investments, in the name of defendant MAURICE PHILLIPS, Brokerage Account No. 672-943843.

2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 21, United States Code, Section 853.

## NOTICE OF FORFEITURE NO. 2

**THE GRAND JURY FINDS PROBABLE CAUSE THAT:**

1.      As a result of the violation of Title 21, United States Code, Section

848, set forth in this indictment, defendant

**MAURICE PHILLIPS,**
**a/k/a "Marlon Sampson,"**

shall forfeit to the United States of America:

a.      any property constituting, or derived from, proceeds obtained,

directly or indirectly, as the result of the violation of Title 21, United States Code, Section 848,

as charged in this indictment;

b.      any property used or intended to be used, in any manner or part, to

commit, or to facilitate the commission of, the violation of Title 21, United States Code, Section

848, as charged in this indictment;

c.      any interest in, claims against, and property or contractual rights affording

a source of control over the enterprise, as the result of the violation of Title 21, United States

Code, Section 848, as charged in this indictment.

Such property shall include, but not be limited to the following:

(1)   Money Judgment: A sum of money equal to at least $31,000,000 in

United States currency, representing the amount of property/proceeds obtained as a result of the

violation of Title 21, United States Code, Sections 848.

(2)   Bank Accounts: All funds under the control of defendant MAURICE

PHILLIPS in the following accounts:

| BANK OF AMERICA | |
|---|---|
| **ACCOUNT NAME (AND/OR INITIALS)** | **ACCOUNT NUMBER** |
| E.P.<br>Maurice Phillips | XXXXX2249 |
| **CITIZENS BANK** | |
| H.G. | XXXXXX0176 |
| H.G. | XXXXXX9023 |
| H.G., Trustee for G.G. | XXXXXX1973 |
| H.G., Trustee for G.G. | XXXXXX9467 |
| **PNC BANK** | |
| Maurice Phillips | XXXXXX1615 |
| **WACHOVIA BANK** | |
| A.P.<br>Maurice Phillips, Custodian | XXXXXXXXX8427 |
| Ahom, Inc. | XXXXXXXXX0038 |
| Ahom, Inc.<br>Escrow - Maurice Phillips, Agent | XXXXXXXXX7120 |
| Chanell Cunningham | XXXXXXXXX8008 |
| Maurice Phillips<br>A.P. | XXXXXXXXX8038 |
| Maurice Phillips | XXXXXXXXX4604 |
| Phoenix Terrell | XXXXXXXXX2628 |

(3)  Personal Property: One 2004 Chrysler 300M registered to

Maurice Phillips bearing Vehicle Identification Number 2C3HE66G64H692685.

        (4)  <u>Real Property</u>: The following real property:

        (A)  The real property known as 13617 Hollow Log Drive, Upper Marlboro, Maryland, titled to Angelique M. Lewis and defendant MAURICE C. PHILLIPS, and further described in the land records of Prince George's County, Maryland, in Liber 18014, Folio 564.

        (B)  The real property known as 137 Mullen Drive, Sicklerville, New Jersey, titled to "Phoenix J. Terrell," and further described in the land records of Camden County, New Jersey, on December 1, 2000, at Volume 5127, Page 657.

        (C)  The real property known as 56 Woodland Drive, Roselle, New Jersey, New Jersey, titled to defendant MAURICE C. PHILLIPS, and further described in the land records of Union County, New Jersey, on July 21, 1999, at Volume 4844, Page 155.

        (D)  The real property known as 91 Halsted Street, East Orange, New Jersey, titled to defendant MAURICE C. PHILLIPS, and further described in the land records of Essex County, New Jersey, on August 4, 2001, at Volume 5817, Page 35.

        (E)  The real property known as 168 Orange Street, Bloomfield, New Jersey, titled to defendant MAURICE C. PHILLIPS, and further described in the land records of Essex County, New Jersey, on April 16, 2001, at Volume 5762, Page 406.

        (F)  The real property known as 142 Maple Avenue, Montclair, New Jersey, titled to defendant MAURICE C. PHILLIPS, and further described in the land records of Essex County, New Jersey, on April 16, 2001, at Volume 5762, Page 403.

        (G)  The real property known as 420 Main Street, Darby,

Pennsylvania, titled to defendant MAURICE C. PHILLIPS, and further described in the land records of Delaware County, Pennsylvania, on February 6, 2006, at Volume 3724, Page 243.

        (H)  The real property known as 422 Main Street, Darby, Pennsylvania, titled to defendant MAURICE C. PHILLIPS, and further described in the land records of Delaware County, Pennsylvania, on February 6, 2006, at Volume 3724, Page 247.

        (I)  The real property known as 430 Main Street, Darby, Pennsylvania, titled to defendant MAURICE C. PHILLIPS, and further described in the land records of Delaware County, Pennsylvania, on February 6, 2006, at Volume 3724, Page 250.

        (J)  The real property known as 15 LaTour Lane, Newark, Delaware, titled to Herbert Q. Gray, and further described in the land records of New Castle County, Delaware, on January 20, 2006, at Instrument Number 20060120-0006896.

        (K)  The real property known as 2110 Federal Street, Philadelphia, Pennsylvania, titled to defendant CHANELL CUNNINGHAM, and further described in the records of the Office of the Recorder of Deeds for Philadelphia County, Pennsylvania, on June 20, 2006, at Document No. 51466932.

        (N)  The real property known as 1015 East Washington Street, High Point, North Carolina, titled to defendant MAURICE PHILLIPS and Arnold Phillips, and further described in the land records of Guilford County, North Carolina, on April 9, 2007, at Deed Book 6704, Page 801.

        (O)  The real property known as 4111 Boarman Drive, Baltimore, Maryland, titled to defendant MAURICE PHILLIPS and further described in the land records of Baltimore County, Maryland, on September 6, 2007, at Volume 10014, Page 404.

(5)  Other:

(A)  Approximately $20,000 on deposit in an escrow account maintained by Kettler, McLean, Virginia, on behalf of defendant MAURICE PHILLIPS for the purchase of a condominium in Largo, Maryland.

(B) All funds (approximately $167,000 net value on September 5, 2007) on deposit with Fidelity Investments, in the name of defendant MAURICE PHILLIPS, Brokerage Account No. 672-943843.

2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 21, United States Code, Section 853.

<u>**NOTICE OF FORFEITURE NO. 3**</u>

**THE GRAND JURY FINDS PROBABLE CAUSE THAT:**

       1.    As a result of the violations of Title 18, United States Code, Sections

1956 and 1957, set forth in this indictment, defendants

**MAURICE PHILLIPS,**
**a/k/a "Marlon Sampson," and**
**CHANELL CUNNINGHAM**

shall forfeit to the United States of America any and all property involved in such offenses, and

any property traceable to such property.

       Such property shall include, but not be limited to, the following:

       (1)  <u>Money Judgment</u>: A sum of money equal to at least $31,000,000 in

United States currency, representing the amount of property/proceeds involved in the violations

of, and the conspiracy to violate, Sections 1956 and 1957, and property traceable thereto, for

which the defendants are jointly and severally liable.

       (2)  <u>Bank Accounts</u>: All funds under the control of the defendants named

above in the following accounts:

| BANK OF AMERICA | |
|---|---|
| **ACCOUNT NAME (AND/OR INITIALS)** | **ACCOUNT NUMBER** |
| E.P.<br>Maurice Phillips | XXXXX2249 |
| **CITIZENS BANK** | |
| H.G. | XXXXXX0176 |
| H.G. | XXXXXX9023 |
| H.G., Trustee for G.G. | XXXXXX1973 |

| ACCOUNT NAME (AND/OR INITIALS) | ACCOUNT NUMBER |
|---|---|
| H.G., Trustee for G.G. | XXXXXX9467 |
| **PNC BANK** | |
| Maurice Phillips | XXXXXX1615 |
| **WACHOVIA BANK** | |
| A.P. Maurice Phillips, Custodian | XXXXXXXXX8427 |
| Ahom, Inc. | XXXXXXXXX0038 |
| Ahom, Inc. Escrow - Maurice Phillips, Agent | XXXXXXXXX7120 |
| Chanell Cunningham | XXXXXXXXX8008 |
| Maurice Phillips A.P. | XXXXXXXXX8038 |
| Maurice Phillips | XXXXXXXXX4604 |
| Phoenix Terrell | XXXXXXXXX2628 |

(3)  Personal Property: One 2004 Chrysler 300M registered to Maurice Phillips bearing Vehicle Identification Number 2C3HE66G64H692685.

(4)  Real Property: The following real property:

(A)  The real property known as 13617 Hollow Log Drive, Upper Marlboro, Maryland, titled to Angelique M. Lewis and defendant MAURICE C. PHILLIPS, and further described in the land records of Prince George's County, Maryland, in Liber 18014, Folio 564.

(B)   The real property known as 137 Mullen Drive, Sicklerville, New Jersey, titled to "Phoenix J. Terrell," and further described in the land records of Camden County, New Jersey, on December 1, 2000, at Volume 5127, Page 657.

(C)   The real property known as 56 Woodland Drive, Roselle, New Jersey, New Jersey, titled to defendant MAURICE C. PHILLIPS, and further described in the land records of Union County, New Jersey, on July 21, 1999, at Volume 4844, Page 155.

(D)   The real property known as 91 Halsted Street, East Orange, New Jersey, titled to defendant MAURICE PHILLIPS, and further described in the land records of Essex County, New Jersey, on August 4, 2001, at Volume 5817, Page 35.

(E)   The real property known as 168 Orange Street, Bloomfield, New Jersey, titled to defendant MAURICE PHILLIPS, and further described in the land records of Essex County, New Jersey, on April 16, 2001, at Volume 5762, Page 406.

(F)   The real property known as 142 Maple Avenue, Montclair, New Jersey, titled to defendant MAURICE PHILLIPS, and further described in the land records of Essex County, New Jersey, on April 16, 2001, at Volume 5762, Page 403.

(G)   The real property known as 420 Main Street, Darby, Pennsylvania, titled to defendant MAURICE PHILLIPS, and further described in the land records of Delaware County, Pennsylvania, on February 6, 2006, at Volume 3724, Page 243.

(H)   The real property known as 422 Main Street, Darby, Pennsylvania, titled to defendant MAURICE PHILLIPS, and further described in the land records of Delaware County, Pennsylvania, on February 6, 2006, at Volume 3724, Page 247.

(I)   The real property known as 430 Main Street, Darby,

Pennsylvania, titled to defendant MAURICE PHILLIPS, and further described in the land records

of Delaware County, Pennsylvania, on February 6, 2006, at Volume 3724, Page 250.

       (J)  The real property known as 15 LaTour Lane, Newark,

Delaware, titled to Herbert Q. Gray, and further described in the land records of New Castle

County, Delaware, on January 20, 2006, at Instrument Number 20060120-0006896.

       (K)  The real property known as 2110 Federal Street, Philadelphia,

Pennsylvania, titled to defendant CHANELL CUNNINGHAM, and further described in the

records of the Office of the Recorder of Deeds for Philadelphia County, Pennsylvania, on June

20, 2006, at Document No. 51466932.

       (N) The real property known as 1015 East Washington Street, High

Point, North Carolina, titled to defendant MAURICE PHILLIPS and Arnold Phillips, and further

described in the land records of Guilford County, North Carolina, on April 9, 2007, at Deed

Book 6704, Page 801.

       (O) The real property known as 4111 Boarman Drive, Baltimore,

Maryland, titled to defendant MAURICE PHILLIPS and further described in the land records of

Baltimore County, Maryland, on September 6, 2007, at Volume 10014, Page 404.

       (5) Other:

       (A)  Approximately $20,000 on deposit in an escrow account

maintained by Kettler, McLean, Virginia, on behalf of defendant MAURICE PHILLIPS for the

purchase of a condominium in Largo, Maryland.

       (B) All funds (approximately $167,000 net value as of

September 5, 2007) on deposit with Fidelity Investments, in the name of defendant MAURICE

PHILLIPS, Brokerage Account No. 672-943843.

      2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the Court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

      All pursuant to Title 18, United States Code, Section 982.

## NOTICE OF SPECIAL FINDINGS

**THE GRAND JURY FURTHER FINDS THAT:**

1. As to Counts Thirteen, Fourteen and Fifteen, defendant MAURICE PHILLIPS:

a. was 18 years of age or older at the time of the offense [Title 18, United States Code, Section 3591(a)];

b. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, that Chineta Glanville and Dane King died as a direct result of that act [Title 18, United States Code, Section 3591(a)(2)(C)];

c. procured the commission of the offense, that is, the murder of Chineta Glanville, and as a consequence thereof, also the murder of Dane King, by payment, or promise of payment, of anything of pecuniary value [Title 18, United States Code, 3592(c)(7)]; and

d. committed the offense after substantial planning and premeditation to cause the death of a person, that is, Chineta Glanville, and as a consequence thereof, also Dane King [Title 18, United States Code, Section 3592(c)(9)].

**A TRUE BILL:**

_____

**FOREPERSON**

**PATRICK L. MEEHAN**
**United States Attorney**

69